UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AT&T UNIVERSAL CARD SERVICES,
Plaintiff-Appellant,

v.                                                                           No. 99-1595

WALTER J. BAKER,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-98-269-3, BK-97-35077-S)

Argued: December 3, 1999

Decided: March 2, 2000

Before WIDENER and TRAXLER, Circuit Judges, and
Cynthia H. HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kevin Michael Fitzpatrick, KEVIN M. FITZPATRICK,
P.C., Fairfax, Virginia, for Appellant. Randal Kirk Masters, AFFILI-
ATED ATTORNEYS, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant AT & T Universal Card Services ("AT & T") appeals from a judgment of the district court affirming the bankruptcy court's determination that Walter J. Baker's ("Baker's") debt to AT & T be discharged under 11 U.S.C. § 523(a)(2)(A). The bankruptcy court had concluded that Baker neither made false representations to AT & T nor intended to deceive AT & T. The bankruptcy court also found AT & T's reliance on Baker's representations to be unjustifiable. We have jurisdiction under 28 U.S.C. § 158(d) and affirm.

In order to prove a debtor's ineligibility for discharge under § 523(a)(2)(A), the creditor must prove every element of that statutory provision by a preponderance of the evidence. Section § 523(a)(2)(A) prevents the discharge of a debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." To succeed in a § 523(a)(2)(A) claim, a creditor therefore needs to show by a preponderance of the evidence that the debtor made a representation to the creditor; that the debtor knew the representation was false at the time it was made; that the debtor made the representation with the intention and purpose of deceiving the creditor; that the creditor relied on such representation; and that the creditor sustained the alleged loss and damage as a proximate result of the false representation having been made. See In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996).

The district court concluded, and Appellee concedes, that Appellee made an implied representation to Appellant when he accepted the cash advance on his credit card. Accordingly, our inquiry turns to whether Appellee knew his representation was false when he made it.

Appellant argues that the Court should infer knowing misrepresentation from the recklessness of Appellee's spending practices. Appel-

2

lant emphasizes that Appellee was deeply in debt and that Appellee knew or should have known about all his liabilities, so he must have known that he would be unable to repay Appellant. Whatever the merits of Appellant's legal argument, we need not decide today whether knowledge of falsity can be inferred from the magnitude of a debtor's insolvency, because Appellee's conduct does not rise to the level of recklessness.

Several factors considered by the bankruptcy court suggest that Appellee was merely optimistic about his future economic situation. First, the bankruptcy court concluded as a matter of fact that at the time Appellee obtained the cash advance, he believed the sale of his house and his prospective new job would increase his income and decrease his expenses. Second, the bankruptcy court found that Appellee believed he would be able to reduce his children's day care expenses significantly because his new job would allow him to work the night shift. Third, the bankruptcy court determined that Appellee dramatically underestimated the interest payments he would have to make on the cash advance. These factors might have caused a reasonable person in Appellee's shoes to believe that he could pay off his AT & T debts. It is easy to second-guess Appellee's choices in hindsight, but there is a difference between optimism and recklessness. See, e.g., Rembert v. AT & T Universal Card Servs., 141 F.3d 277, 282 (6th Cir. 1998) (affirming a decision that allowed a compulsive gambler to discharge her debt of a cash advance taken from a casino's ATM). There is no basis for holding that the court below abused its discretion by failing to find reckless behavior by Appellee.

Because we find that Appellee did not know his representation was false at the time he obtained the cash advance, this panel need not reach the questions of whether Appellee intended to defraud Appellant, whether Appellant relied on Appellee's representations, or whether Appellant sustained a loss as a proximate result of the misrepresentations.

Appellant has failed to sustain its claim under§ 523(a)(2)(A). We therefore affirm the judgment of the district court.

AFFIRMED

3